# WRAGG v. THE STATE.

1. The statute forbidding the employment of slaves, or free persons of color, in sampling cotton, applies to those cases only, where the person employing the slave, or free person of color, is not the owner of the cotton.
2. The employment of a slave, or free person of color, to perform the manual labor of drawing the sample from the bale, and carrying it to an office, under the superintendence and control of a white man, is not a violation of the act.

Novel and difficult questions from the Criminal Court of Mobile. Before the Hon. John E. Jones.

THE defendant Wragg was indicted and convicted in the criminal court of Mobile, under the seventh section of the act approved the 29th February, 1848, entitled an act to prevent frauds in sampling cotton, and for other purposes.

Upon the trial, it appeared in evidence, that he was a purchaser of cotton, but never sold any. That his business was to buy cotton, on orders received for that purpose, and when he wished to purchase, he went to a factor, and made the purchase by the samples furnished or exhibited by the factor. These samples he takes, the price is agreed on, the cotton weighed, he receives an order for the delivery of the cotton, and it is then at his risk. He then sends one of his clerks to examine the condition of the cotton, and to classify it. In classifying the cotton, a sample is taken from the bag, and its quality examined. This is done for the purchaser, and the sample is held for his use. This sample is taken from the bag, after the purchase is complete, and the weights have been ascertained. If a variance should be found between the sample furnished by the factor, and the sample taken from the bag after the purchase, it would lead to inquiry, and it might produce a rescission of the contract. But usually the factor knows nothing of the matter. The object of

this sampling, is to ascertain how the bales are to be classed. The person engaged to classify the cotton is a free white man, and he must be present when each sample is drawn from the bale, otherwise it could not be marked, and classed, according to the sample taken from each bale.

It was shown, that a free person of color accompanied the classifier of the defendant, and under his directions and order, he used a gimlet, to draw from the bale a sample of the cotton. The classifier then examined it, and it was placed in a bag, and carried by the free negro to the office of the defendant. It was further in proof, that the young man who classified the cotton superintended the whole, and could not be absent, and do his duty.

On this evidence the court charged the jury—

1. That the act of drawing specimens of cotton from the bag, for the purpose of exhibition or comparison, in any commercial transaction, was sampling.

2. That such an act was lawful, if done by a slave, or free person of color, for the use, and under the directions of the owner of the cotton. But that no agent, broker, or factor, could employ a slave, or free person of color, to do this act; nor would the presence of the agent, factor, or broker, render it legal.

3. If the jury believe that the cotton was purchased by the defendant of a factor, either for his own use, or the use of another, and with the view of testing the accuracy of the samples exhibited by the factor at the time of the sale; or to classify each bale, he had directed that a sample should be taken from each bale, and for this purpose a slave, or free person of color was employed, although under the directions of a free white man, the defendant was guilty of a violation of the statute.

The defendant requested the court to charge the jury—

1. That if they believed the cotton from which the samples were taken belonged to the defendant, and that he directed the slave or free person of color to draw the samples, to ascertain if the samples of the factor were exact, he had not violated the statute.

2. That if they believed the person employed to examine and classify the cotton, was a free white man, who was con-

tinually present superintending the acts and conduct of the slave, or free negro, and that the slave was only employed to do the manual labor of drawing the samples from the bale, and carrying them to the office of the defendant, that then the defendant was not guilty of a violation of the act.

These charges the court refused, but the questions of law arising on the charges given, and the charges refused, being novel and difficult, they were certified by the presiding judge to this court.

ATTORNEY GENERAL, for the State.

J. A. CAMPBELL, contra.

DARGAN, J.—The section of the act under which the defendant is indicted, is as follows: "That hereafter, it shall not be lawful for any person to engage, employ, permit, or suffer any slave, or free person of color, to sample any cotton; and if any person shall engage, employ, permit, or suffer, any slave, or free person of color, to sample any cotton, the person so offending shall be guilty of a misdemeanor, and on conviction, shall be fined in a sum not less than $50, nor exceeding $1,000.

The object of this section of the act, must have been to prevent frauds from being committed on the owner of the cotton, under the pretence, of sampling it, and hence slaves, and free persons of color, are prohibited from being employed to sample cotton. That the intention of the act was to protect the owner of the cotton from frauds, under the pretext of sampling, is manifest from the preceding sections of the act. The first section enacts, that if any person shall cut, tear, or otherwise open any bale of cotton, under the pretence of sampling it, *without the permission* of the owner, consignee, or agent of such cotton, the person so offending shall be deemed guilty of a misdemeanor, &c. The second section provides for the punishment of those who shall pick, pull, or take from a bale of cotton, any part of it, under any pretence, without the permission of the owner; and indeed all the sections of the act show, that the intention of the legislature in passing it, was to protect the owners of cotton from frauds and larcenies, committed under the pretence of

sampling it, which appears must be done in order to enable the owner, his agent, or consignee, to dispose of it.

If the design and scope of the act, was to protect the owner of the cotton from frauds committed by irresponsible persons in sampling it, it would follow necessarily, that negroes, and free persons of color, are prohibited from sampling cotton, and those who employ them punished in those cases only, where the cotton does not belong to the person employing the slave, or free person of color; for if the person employing the slave is himself the owner of the cotton, he may do with it as he pleases; he may employ whom he pleases to sample, or do any thing else in reference to it; and we cannot suppose the legislature intended to punish him for employing an individual, who might not be faithful in the discharge of the duty he undertook. The statute, then, designing to punish those who employ slaves, or free persons of color to sample cotton, in those cases only, where the person employing the slave or free person of color is not the owner of the cotton, the court should have given the charge requested, "that if the jury believed the defendant was the owner of the cotton, and the slave drew the samples from the bale under his directions, that the defendant had not violated the act.

We are also of the opinion, that by prohibiting slaves and free persons of color from sampling cotton, the legislature intended to prohibit them from the exercise of that control and authority over the cotton, that the act of sampling must necessarily give, and which affords ample opportunities to commit frauds, and larcenies, upon the property of the absent owner. But we cannot think the legislature intended to prohibit the use of the physical power of the slave, in drawing the cotton from the bale, when he was supervised, and controlled in the act by a responsible free white man. The slave in such a case, cannot be said to be the sampler of the cotton, but the white man samples it; he exercises the power and control over the cotton, the act of sampling gives; and the physical strength of the slave, is the means by which he takes the sample from the bale, and because he orders the slave to draw a sample from a bale, he cannot be said to employ the slave to sample the cotton, if he is present, controlling and superintending the act. But the white man

himself is sampling the cotton, the slave the means of drawing the samples from the bale. In such a case, no control or authority is exercised by the slave over the cotton, and those opportunities to commit fraud and larceny upon the property of the owner, are not afforded. These were the evils intended to be guarded against; but it could not have been intended to prohibit a white man from using the physical strength of the slave in drawing the sample from the bale, he being present and controlling the act.

The court therefore erred in refusing to give the charge requested, "that if the jury believed, that the person employed to examine and classify the cotton, was a free white man, who was continually present superintending the acts and conduct of the slave, and that the slave was only employed to do the manual labor of drawing the samples from the bale, and carrying them to the office of the defendant, the defendant was not guilty of a violation of the act.

For these errors, the judgment is reversed, and the cause remanded.